## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA and ) | |
| GOVERNMENT OF VIRGIN ISLANDS ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL NO. 2008-03 |
| v. ) | |
| ) | |
| DAMION BELL ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## **MEMORANDUM OPINION**

FINCH, J.

THIS MATTER comes before the Court on a Motion to Suppress filed by Defendant Damion Bell. Defendant seeks to suppress items seized in connection with his arrest and his statements given on December 26, 2007. The United States of America opposes Defendant's motion. An evidentiary hearing was held on June 26, 2008.

### I. FACTUAL FINDINGS AND BACKGROUND

On December 26, 2007 around 11:30 p.m., Officers Robin Richards, Roland Richardson, Franchet Hodge, Orlando Benitez, Alinthia Carbon and Sgt. Sidney Elskoe of the Virgin Islands Police Department ("VIPD") were driving out of Frederiksted town in an unmarked police vehicle. While on Queen Street, the Officers noticed a black vehicle traveling behind their vehicle without the headlights displayed. The black colored vehicle, later identified as a four door Honda Civic license plate # CDL-669, trailed behind the unmarked police vehicle for

1

several minutes with its headlights off. The black colored vehicle then overtook the unmarked police vehicle on a solid double yellow line in the vicinity of Mars Hill in a residential area. A traffic stop was conducted and the driver, Defendant Damion Bell, was asked for his driver's license. Defendant stated that he did not possess a valid driver's license and he was subsequently told to exit the vehicle. Two passengers remained in the vehicle. Ms. Ariffa Perinon was sitting in the front passenger seat and a ten year old minor was sitting in the right side of the rear seat.

After Defendant exited the vehicle leaving the car door open, Officer Richards observed what appeared to be a silver colored magazine with live rounds of ammunition in it, protruding from under the driver's seat. Defendant was then placed under arrest and verbally advised of his Miranda rights. Ms. Perinon was ordered out of the vehicle at this time. A search of the vehicle revealed that a dark colored 9mm handgun was located under the driver's seat with ten live rounds in the clip, one live round in the chamber and a extra clip containing ten live rounds. Ms. Perinon was asked if she possessed a firearm license to which she replied no. She was then placed under arrest and verbally advised of her Miranda rights.

Defendant stated freely that the firearm belonged to him and that he purchased it from a "crack head" for seventy five dollars. Defendant was asked if he possessed a firearm license, and he answered no, and stated further that he had previously been arrested for having an illegal gun and was currently on probation. A firearms license records check confirmed that Defendant did not have a firearms license in the Virgin Islands. Defendant and Ms. Perinon were then transported to the Patrick Sweeney police station for processing.

Defendant was charged with Possession of a firearm by a convicted felon, Possession of ammunition by a convicted felon and Unauthorized possession of a Firearm. Defendant was also

issued a citation for operating a motor vehicle upon a public road way without a valid driver's license, overtaking a vehicle on a double solid yellow line and operating a motor vehicle upon a public roadway without lit headlights after 6:00 p.m.

Defendant argues that the stop of his vehicle on December 26, 2007, and his subsequent arrest, occurred in violation of his rights under the Fourth Amendment. Def.'s Mot. to Suppress at 2. Defendant submits that the stop, search, and arrest were without reasonable suspicion or any other legal justification. Id. at 1. Defendant claims that any evidence obtained as a result of the arrest and search, including his statements made to police officers, should be suppressed as the fruit of the poisonous tree. Id.

## II. ARREST, SEARCH AND SEIZURE

### A. STANDARD OF REVIEW

The Fourth Amendment protects citizens "against unreasonable searches and seizures." U.S. Const., amend. IV. 2 "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985). There is a presumptive requirement that searches or seizures be carried out pursuant to a warrant. See Katz v. United States, 389 U.S. 347, 357 (1967) ("[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions."). Evidence obtained during the course of an unreasonable search and seizure can be suppressed and not admitted at trial. See Wong Sun v. United States, 371 U.S. 471, 485-86 (1963) (exclusionary rule requires suppression of any evidence which is either the direct or indirect product of illegal police conduct).

3

In some instances, warrantless searches or seizures will be considered reasonable if based on probable cause. See Hill v. California, 401 U.S. 797, 804 (1971) ("[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment"); see also Michigan v. Royer, 452 U.S. 692, 700 (1981) (Every arrest is unreasonable unless supported by probable cause). For example, police officers may lawfully arrest a suspect without a warrant if the officer has probable cause to believe the suspect has committed a felony and the arrest does not occur in the suspect's home. See Maryland v. Pringle, 540 U.S. 366, 373-74 (2003) (upholding warrant-less arrest where police had probable cause to believe defendant had committed a felony after they found cocaine within his reach). An officer also may make an arrest for a misdemeanor committed or attempted in his or her presence. Government of Virgin Islands v. Rodriguez, 300 F. Supp. 860, 865 (D.C.V.I. 1969); see 5 V.I.C. § 3562(1).

Probable cause exists whenever reasonably trustworthy information or circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed by the person being arrested. Draper v. United States, 358 U.S. 307, 313 (1999); United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002); United States v. Laville, 480 F.3d 187, 194 (3d Cir. 2007). While "probable cause to arrest requires more than mere suspicion…it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).

Even in the absence of probable cause, an officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)). Accordingly, an officer may stop a mobile vehicle to

investigate a reasonable and articulable suspicion that its occupants were involved in criminal activity. United States v. Cuevas-Reyes, 2008 U.S. Dist. LEXIS 14523 at *6-7 (D.V.I. 2008) (citing Ornelas v. United States, 517 U.S. 690, 693 (1996) and United States v. Hensley, 469 U.S. 221, 226-27 (1985)).

Reasonable suspicion has been described as "a particularized and objective basis for suspecting the person stopped of criminal activity." Cuevas-Reyes, 2008 U.S. Dist. LEXIS 14523 at *7 (citing Ornelas, 517 U.S. at 695). The totality of the circumstances of each case are considered by the courts to determine whether reasonable suspicion exists. United States v. Arvizu, 534 U.S. 266, 273-74 (2002). Police officers may use their own experience and training "to make inferences . . . and deductions about the cumulative information available to them that might well elude an untrained person." Cuevas-Reyes, 2008 U.S. Dist. LEXIS 14523 at *7 (quoting Arvizu, 534 U.S. at 273-74). However, reasonable suspicion may not be based on an officer's hunch alone. Cuevas-Reyes, 2008 U.S. Dist. LEXIS 14523 at *7. The likelihood of criminal activity required for reasonable suspicion need not rise to the level required for probable cause. Id.; Arvizu, 534 U.S. at 273-74.

Reasonable suspicion and probable cause are determined with reference to the facts and circumstances within the officer's knowledge at the time of the investigative stop or arrest. Devenpeck v. Alford, 543 U.S. 146, 152 (2004); Florida v. J.L., 529 U.S. 266, 271, (2000); Laville, 480 F.3d. at 194. The validity of an investigative stop or arrest does not depend on whether the suspect actually committed a crime. See Arvizu, 534 U.S. at 277 ("[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct"); Gerstein v. Pugh, 420 U.S. 103, 119-123 (1975) (mere fact that suspect is later acquitted of offense for which he is arrested is irrelevant to the validity of arrest). The appropriate inquiry,

5

rather, is whether the facts and circumstances within the officer's knowledge at the time of an investigative stop or arrest objectively justify that action. Devenpeck, 543 U.S. at 153; see also Whren v. United States, 517 U.S. 806, 813, (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"); Pringle, 540 U.S. at 371 (in considering whether probable cause exists, courts "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause").

"In determining whether an arrest is reasonable under the Fourth Amendment, courts must never lose sight of the fundamental principle that 'reasonable suspicion and probable cause…are commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Laville, 480 F.3d. at 196 (quoting Ornelas, 517 U.S. at 695 and Illinois v. Gates, 462 U.S. 213, 231 (1983)). The Third Circuit has held that district courts "must apply a common sense approach, based on the totality of the circumstances to determine whether there was probable cause to arrest." Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000); see also Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (stating that courts must "use a 'common sense' approach to the issue of probable cause").

    B. **DISCUSSION**

        i. **Standing to Contest Search of Vehicle**

To be entitled to suppression of evidence, a defendant must establish that a personal Fourth amendment privacy interest of his was violated by police actions involving the premises

searched. "Fourth Amendment rights are personal and may not be asserted vicariously." Rakas v. Illinois, 439 U.S. 128, 133-34 (1978). A suppression motion must be predicated on a defendant's personal legitimate fourth amendment interest and cannot merely be a vicarious claim that the government has invaded some other third person's privacy rights. United States v. Payner, 447 U.S. 727 (1980). Suppression of evidence is an appropriate remedy only when the search violates a person's constitutional rights and it is not enough that a person is aggrieved only by the introduction of damaging evidence derived from the search. In determining whether a search of an object has infringed upon a person's Fourth Amendment rights, the court must consider two factors: (1) whether the defendant has manifested a subjective expectation of privacy in the object of the challenged search, and (2) whether that expectation of privacy was objectively reasonable. See California v. Ciraolo, 476 U.S. 207, 211 (1986).

In Rakas, 439 U.S. at 148-49, the Supreme Court held that a passenger who asserts neither a possessory nor a property interest in a vehicle would not normally have a legitimate expectation of privacy in the vehicle. A passenger generally does not establish standing to contest the search of a vehicle merely because he was charged with a possessory crime. See United States v. Eylicio-Montoya, 18 F.3d 845, 850 (10th Cir. 1994); United States v. Hernandez, 1999 U.S. Dist. LEXIS 7713 at *25-27 (D. Kan. Feb. 23, 1999). However, a defendant may establish a reasonable expectation of privacy by presenting evidence of some lawful control or possession of the vehicle. Id.; Eylicio-Montoya, 18 F.3d at 851.

In United States v. Baker, 221 F.3d 438, 443 (3d Cir. 2000), the Third Circuit stated:

> "Although [defendant] did not own the car, he had substantial control over it insofar as he had borrowed it from a friend and had been driving it for four to six weeks. . . .We conclude that there is clear evidence of continuing possession and control, as well as no evidence that the driver obtained the car illegitimately. Under the circumstances,

7

> therefore, Baker had the requisite legitimate expectation of privacy to support standing for Fourth Amendment purposes."

Like the appellant in <u>Baker</u>, Defendant had permission to use the vehicle. The Court finds that Defendant has demonstrated that he had a legitimate possessory interest in or lawful control over the car. See <u>United States v. Howard</u>, 210 F. Supp. 2d 503, 512 (D. Del. 2002). Therefore, the Court finds that Defendant has standing to contest the search of the Honda Civic.

### ii. Probable Cause to Stop

Considering the facts of this case together with all reasonable inferences, the Court finds that by the time officers approached Defendant and his passengers in the vicinity of Mars Hill, they had probable cause to believe that a crime had taken place. See <u>Hill</u>, 401 U.S. at 804. Before officers seized Defendant by stopping the vehicle, they witnessed several traffic violations, such as overtaking a vehicle on a double solid yellow line and operating a motor vehicle upon a public roadway without lit headlights after 6:00 p.m. See <u>Whren v. United States</u>, 517 U.S. 806, 810 (1996) (holding that decision to stop automobile is reasonable where police have probable cause to believe that traffic violation has occurred). Facts indicating wrongdoing on Defendant's part, prior to the traffic stop, were plainly present here.

The totality of the circumstances provided the officers with probable cause to believe that a traffic violation had occurred and even if no additional events had transpired, the officers would have been justified in stopping Defendant and his passengers. <u>Whren</u>, 517 U.S. at 810; <u>see</u> <u>United States v. Sharpe</u>, 470 U.S. 675, 682 (1985); <u>see also</u> <u>United States v. Mosley</u>, 454 F.3d 249, 252 (3d Cir. 2006) (noting that Supreme Court established bright-line rule that any technical violation of traffic code legitimizes a stop, even if stop is merely pretext for investigation of some other crime). Because it was objectively reasonable to stop Defendant's

8

vehicle, the initial stop of all of its occupants was also lawful. See, e.g., Maryland v. Wilson, 519 U.S. 408, 414 (1997) (holding that officers could not only stop passengers but order them out of the vehicle during a lawful stop without violating their Fourth Amendment rights).

### iii. Probable Cause to Arrest and Search

When Defendant failed to produce a valid driver's license and told the officers that he was not licensed to drive, the officers had probable cause to believe that Defendant had committed an offense. See Draper, 358 U.S. at 313; Myers, 308 F.3d at 255; Laville, 480 F.3d at 194. Accordingly, it was lawful for the officers to effect an immediate arrest of Defendant without first obtaining a warrant. See Rijos, 285 F. Supp. at 133; see also Rodriguez, 300 F. Supp. at 864 (holding that an officer may make an arrest for a misdemeanor committed or attempted in his presence); 5 V.I.C. § 3562(1) (giving Virgin Islands police officers authority to arrest an individual without a warrant "for a public offense committed or attempted in his presence").

The subsequent search of the vehicle was justified as a search incident to arrest. See Chimel v. California, 395 U.S. 752, 763 (1969) (stating that "it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape"); see also Rodriguez, 300 F.Supp. at 864 ("It is well settled that there may be a search incident to a lawful arrest and that physical evidence seized in the course of such a search will not be suppressed on the ground that the search was illegal"). An officer need not have further reasonable suspicion or probable cause to conduct a search incident to a valid arrest. Howard, 210 F. Supp. 2d at 522; see United States v. Robinson, 414 U.S. 218, 234-35 (1973).

Under Title 5 of the Virgin Islands Code, Section 3565(d), "[a]ny person making an arrest may take from the person arrested all dangerous weapons which he may have about his person." The search incident to Defendant's arrest uncovered a 9mm handgun as well an extra clip under the driver's seat of the vehicle and the officers were permitted to seize such items. 5 V.I.C. § 3565(d); see Chimel, 395 U.S. at 763. Additionally, the silver colored magazine with live rounds of ammunition in it could have been seized under the "plain view" doctrine. The warrantless seizure of evidence of a crime in plain view is not prohibited by the Fourth Amendment. Horton v. California, 496 U.S. 128, 130 (1990).

In this case, the seizure of the gun was not a violation of the Fourth Amendment, where part of the gun could be seen through an open door from outside the vehicle. See U.S. v. Brooks, 449 F.2d 1263, 1264 (3d Cir. 1971); U.S. v. Weatherspoon, 82 F.3d 697, 699 (6th Cir. 1996); see also U.S. v. Bellinger, 343 F.Supp. 2d 417, 420 (E.D. Pa. 2004) (holding that gun could be seized under the "plain view" doctrine, where but of gun was seen through an open door from outside vehicle, after police ordered driver and passengers out of the vehicle, which was stopped for traffic violation). The magazine of the gun was observed by Officer Richards protruding from under the driver's seat in plain view prior to Defendant's arrest and Defendant's explanation of its presence indicated that it was evidence of a crime.

The Court finds that the officers' arrest of Defendant, the search of the vehicle and seizure of the gun/clip were legally justified and did not violate Defendant's Fourth Amendment rights. See Michigan v. DeFillippo, 443 U.S. 31, 35 (1979). Therefore, Defendant's Motion to Suppress the items seized in connection with his arrest is denied.

### III. VOLUNTARINESS OF DEFENDANT'S STATEMENTS

#### A. STANDARD OF REVIEW

In Miranda v. Arizona, 384 U.S. 436 (1966) the Supreme Court held that to protect an accused's Fifth Amendment right against self-incrimination during the inherently coercive custodial interrogation setting, certain procedural safeguards must be employed. These safeguards include the explicit warning that the accused "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." Id. at 479. A court must suppress a statement obtained by a law enforcement officer from a defendant if the officer obtained the statement in violation of the rules enunciated in Miranda. Id.; see also Wong Sun v. United States, 371 U.S. 471, 485-86 (1963) (exclusionary rule requires suppression of any evidence which is either the direct or indirect product of illegal police conduct). Before the government may introduce a defendant's incriminating statement in its case in chief, it must prove a voluntary, knowing and intelligent waiver of the accused's Miranda rights. Miranda, 384 U.S. at 475.

Statements made to law enforcement officials are inadmissible into evidence if the statements are involuntary. Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973). "For a defendant's confession to be voluntary, and thus admissible, the government must prove by a preponderance of the evidence that his will was not overborne and that the confession was the product of a rational intellect." United States v. Arcediano, 371 F. Supp. 457, 470 (D.N.J. 1974); see also United States v. Velasquez, 885 F.2d 1076, 1087 (3d Cir. 1990) (explaining that a statement is voluntary when it is "the product of free and deliberate choice rather than

intimidation, coercion or deception."). In Moran v. Burbine, 475 U.S. 412, 421 (1986), the court explained the concept of a valid waiver:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda right has been waived.

External events surrounding the confession and internal psychological facts are to be considered in determining voluntariness. Culombe v. Connecticut, 367 U.S. 568, 603 (1961). "The flexible totality of the circumstances approach requires the reviewing court to consider the specific tactics utilized by the police in eliciting the admissions, the details of the interrogation, and the characteristics of the accused. . . ." Rachlin v. United States, 723 F.2d 1373, 1377 (8th Cir. 1983). Factors to be considered include: the youth of the accused; his lack of education or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep. Bustamonte, 412 U.S. at 226. A statement "must not be extracted by any sort of threats of violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." Bram v. United States, 168 U.S. 532, 542-43 (1897).

### B. DISCUSSION

The government has provided the Court with sufficient evidence to prove that Defendant's statements to law enforcement officers were voluntary. The facts of this case do not

indicate that the officers used abusive tactics or exerted undue pressure to elicit any statements. Rather, the facts show that Defendant stated freely that the firearm belonged to him and that he purchased it from a "crack head" after he was read his Miranda rights.  Defendant was then asked if he possessed a firearm license, and he answered no, and stated further that he was currently on probation for a previous arrest involving the possession of an illegal gun.  There is no evidence that Defendant's level of intelligence prevented him from understanding the Miranda rights that were read to him.  Furthermore, there were no physical punishments inflicted on Defendant and he was not physically threatened or harmed before he made his statement.

      The administration of Miranda warnings to Defendant, followed by his subsequent statements to law enforcement officers indicate an intelligent, knowing and voluntary waiver of Miranda warnings.  After a review of the totality of the circumstances, the Court finds that the government has proven by a preponderance of the evidence that Defendant's statements were voluntary.  The facts of this case do not suggest that Defendant's "will was overborne," or that he was deprived "of [his] ability to make an unconstrained, autonomous decision." United States v. Giampa, 904 F. Supp. 235, 275 (D.N.J. 1995).  Because the statements made by Defendant were the product of his free will, Defendant's Motion to Suppress his statements is denied.

    **IV. CONCLUSION**

      The Court finds that the stop, detention and subsequent arrest of Defendant were based on probable cause.  Defendant's statement and items seized pursuant to his lawful arrest were obtained without violation of his Constitutional rights.  For the reasons stated above, the Motion to Suppress is **DENIED** as to Defendant.

**ENTERED this 15th day of July, 2008.**

                                                       /s/_____
                                        **HONORABLE RAYMOND L. FINCH**
                                        **U.S. DISTRICT JUDGE**